**Opinion issued June 19, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-13-00919-CV**

———————————

## IN RE COMMITMENT OF JOHN EDWARD LETKIEWICZ

---

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Court Case No. 13-04-04026-CV**

---

## MEMORANDUM OPINION

This case involves a civil commitment pursuant to the Sexually Violent Predator Act ("the SVP Act"). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.151 (Vernon 2010 & Supp. 2013). A jury found John Edward Letkiewicz to be a sexually violent predator as defined in the SVP Act after determining that he suffered from a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE

ANN. § 841.003(a) (Vernon Supp. 2013). The trial court rendered a final judgment on the verdict, ordering Letkiewicz committed for outpatient treatment and supervision as required by the SVP Act. *See id.* § 841.081 (Vernon 2010). Raising two appellate issues, Letkiewicz asserts that the trial court erred by denying his motion for directed verdict and by denying his motion to exclude the State's expert witness.[1]

We affirm.

## Background Summary

In 1998, Letkiewicz pleaded guilty to two separate offenses of indecency with a child. One offense involved a charge that Letkiewicz had touched the vagina of a six-year-old girl through her clothing. The other offense involved a charge that Letkiewicz had fondled the penis of a nine-year-old boy. Letkiewicz was sentenced to 16 years in prison for each offense with the sentences to run concurrently.

On April 15, 2013, the State of Texas filed a petition in the 435th District Court in Montgomery County to civilly commit Letkiewicz as a sexually violent

---

[1] This appeal, originally filed in the Ninth Court of Appeals, Beaumont, Texas, was transferred to the First Court of Appeals, Houston, Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2013) (authorizing transfer of cases).

predator under the Sexually Violent Predator Act.[2]  As defined by the Texas Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."  *Id.* § 841.003(a).  In its petition, the State alleged that Letkiewicz was a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

The State averred that Letkiewicz was scheduled to be released from prison on May 22, 2013.  The State further averred that, pursuant to the Act, the TDCJ had conducted an assessment of Letkiewicz to determine whether he suffered from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.  To aid in the assessment, Letkiewicz had been evaluated by an expert, Dr. Charles Woodrick, who had concluded that Letkiewicz met the statutory requirement of behavioral abnormality.  The State requested the trial court to commit Letkiewicz for outpatient treatment and for supervision.

---

[2]  The SVP Act requires that a petition for civil commitment of a sexually violent predator be filed in Montgomery County.  *See* TEX. HEALTH & SAFETY CODE ANN. § 841.041(a) (West 2010) (requiring State allege in its civil commitment petition that person is sexually violent predator, state facts sufficient to support that allegation, and file its petition "in a Montgomery County district court other than a family district court").

3

Finding Letkiewicz indigent, the trial court appointed counsel to represent him on April 17, 2013. On that same date, Letkiewicz answered the State's petition and requested a jury trial. The trial court also signed a docket control order that day, setting trial for June 24, 2013.

In addition, on April 23, 2013, the trial court signed an order, requiring Letkiewicz to be examined by the State's expert. Dr. Michael Arambula, a forensic psychiatrist, examined Letkiewicz on April 30, 2013. The State designated Dr. Arambula as its expert witness on May 1, 2013.

On May 8, 2013, Letkiewicz filed a motion to exclude the testimony of Dr. Arambula. In the motion, Letkiewicz asserted that Dr. Arambula's examination of him had not been timely. Letkiewicz relied on subsection 841.061(c) of the SVP Act. That provision requires an examination by an expert to be completed 90 days before trial. *Id.* § 841.061(c) (Vernon 2010). Pursuant to subsection 841.061(c), Letkiewicz asserted that Dr. Arambula's examination was required to have been completed by March 26, 2013 because trial was set to begin on June 24, 2013. Letkiewicz pointed out that Dr. Arambula conducted his examination on April 30, 2013. Letkiewicz asserted that, because he did not complete an evaluation within the time constraints established by subection 841.061(c), Dr. Arambula's testimony should be excluded.

The State responded to the motion by pointing out that it had not been possible for Dr. Arambula to complete the evaluation by March 26 because suit was not filed until April 15, and the trial court's order for an expert examination was not signed until April 23, 2013. The State claimed that Letkiewicz had agreed to an expedited trial setting at a scheduling conference. The State also asserted that the trial court had "a legitimate interest in protecting the community by expediting trials when the release of individuals alleged to be sexually violent predators is imminent" such as in this case. The trial court denied Letkiewicz's motion to exclude Dr. Arambula's testimony.

On June 24, 2013, a jury was impaneled, and the case proceeded to trial. Dr. Arambula testified on behalf of the State. He stated that he had been retained to conduct a record review and to evaluate Letkiewicz to determine whether Letkiewicz had a behavioral abnormality that made him likely to engage in a predatory act of violence. With respect to his qualifications, Dr. Arambula testified that he was board certified in forensic psychiatry. He had received training to conduct behavioral abnormality evaluations during his forensic psychiatry fellowship. Dr. Arambula testified that he has conducted approximately 50 behavioral abnormality evaluations.

At trial, Dr. Arambula explained that, to conduct these evaluations, he uses the methodology he was taught in his fellowship training, which he testified is

followed by experts in his field for conducting these evaluations. It is referred to as a "structured format" or "structured clinical judgment." He testified that this methodology has also been published in literature. Dr. Arambula stated that, in following this methodology, or structured format, he gathers as much detailed information as possible about the individual by reviewing records and conducting an interview with the individual. He then analyzes the information to determine whether certain risk factors are present. Dr. Arambula testified that these risk factors are indicators of the likelihood that the person will re-offend and have been developed through research.

Dr. Arambula stated that he interviewed Letkiewicz for two-and-one-half hours on April 30, 2013. Dr. Arambula also reviewed Letkiewicz's criminal records, legal records, medical records, prison records and other documents, including the records from a sex-offender treatment provider with whom Letkiewicz had met in 1998 after he was charged with the two indecency offenses, Letkiewicz's deposition taken in this case, and a report from Dr. Woodrick, who had recently evaluated Letkiewicz. Dr. Arambula stated that these are the type of documents typically relied on by experts in his field for a forensic evaluation. He testified that he relied on this information, as well as the information he obtained by interviewing Letkiewicz, in formulating his opinion. Dr. Arambula confirmed

that this method was in accordance with his forensic training and was a method published in the literature.

Dr. Arambula testified that, in analyzing this information, he identified certain risk factors for Letkiewicz. These risk factors led Dr. Arambula to conclude that Letkiewicz has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Arambula testified that the most significant of these risk factors was Letkiewicz's mental condition, specifically that Letkiewicz suffers from sexual deviance. Dr. Arambula testified that, using accepted psychiatric standards, he diagnosed Letkiewicz with pedophilia.

Dr. Arambula testified that there are other factors associated with Letkiewicz's pedophilia that indicate that he is at risk to re-offend. For example, he stated that the number of children Letkiewicz has sexually abused is a risk factor. Dr. Arambula indicated that the records showed that Letkiewicz, who was 46 years old at trial, had molested between 8 and 12 children in his lifetime. According to Dr. Arambula, the exact number of children could not be determined because, over the years, Letkiewicz had admitted and then later denied abusing certain children. Dr. Arambula testified that the fact that Letkiewicz admits to, and then later denies, molesting certain victims indicates that Letkiewicz has some denial of his illness. It also indicates that he minimizes his illness. Dr. Arambula testified that denial and minimization are also risk factors for re-offending.

Dr. Arambula stated that rationalization is another risk factor, which Letkiewicz exhibited. Dr. Arambula gave an example. Letkiewicz had indicated that he thought the nine-year-old boy he had molested wanted to engage in sexual activity. Dr. Arambula stated that such thinking is a way for a pedophile to rationalize the conduct to avoid personal responsibility.

Dr. Arambula testified that the length of time that Letkiewicz abused children is also a risk factor. Letkiewicz admitted that he began abusing children when he was in high school. In addition, Dr. Arambula stated that the fact that Letkiewicz has abused both boys and girls puts him at a higher risk to re-offend. Letkiewicz also explained that individuals that molest boys have a higher risk of re-offending.

The evidence showed that Letkiewicz has never completed sex-offender treatment. Dr. Arambula identified lack of treatment as a risk factor. Dr. Arambula testified that pedophilia cannot be cured but it can be managed through treatment, which teaches the offender to understand the cycle of abuse. Letkiewicz's records indicate that he began treatment after he was charged with the two indecency offenses in 1998 but then quit treatment. Dr. Arambula testified that it was clear to him during the interview that Letkiewicz did not adequately understand the cycle of abuse, which Dr. Arambula indicated was critical to prevent re-offending. The doctor stated that Letkiewicz could not articulate that he

8

understood the cycle of abuse. Instead, Letkiewicz told him that he had the information written on a piece of paper, which he carried with him. Dr. Arambula stated that an offender must "internalize" the information to prevent re-offending. Dr. Arambula indicated that the fact that Letkiewicz had to refer to a piece of paper indicated that Letkiewicz had not internalized the information sufficiently to prevent re-offending. Dr. Arambula also found it significant that Letkiewicz admitted in his deposition that he continues to have thoughts about children a couple of times a month.

Dr. Arambula further testified that another important risk factor for Letkiewicz is his "personality pathology." Dr. Arambula explained that Letkiewicz's history shows that he has difficulty maintaining adult relationships and difficulty in forming attachments with people. Before his incarceration, Letkiewicz also could not maintain employment for any length of time even though he had job skills.

Dr. Arambula also indicated that Letkiewicz's history of alcohol abuse is a risk factor related to his personality pathology. The doctor explained that a pedophile's use of alcohol can have a disinhibiting effect that may lead to re-offending. Letkiewicz had begun alcohol treatment at one point earlier in his life, but he did not complete it.

Dr. Arambula testified that, at the time of trial, Letkiewicz possessed these risk factors. For this reason, Dr. Arambula stated that it was his opinion that Letkiewicz has a behavioral abnormality that makes him likely to engage in a predatory act of violence.

Letkiewicz also testified at trial. In his testimony, Letkiewicz discussed his sexual abuse of six specific children. Even though he had pleaded guilty, Letkiewicz denied that he had abused the six-year-old girl involved in one of his convictions. He did, however, admit to abusing the nine-year-old boy involved in the other conviction. When asked how many children he thinks he has abused, Letkiewicz stated 8 to 10 children.

Letkiewicz admitted that he continues to think about sexual contact with children, though "very rarely." Letkiewicz acknowledged that in his deposition— the previous month—he testified that he continued to have thoughts about sexual contact with children about twice a month.

Letkiewicz stated that he had taken a class in prison that educated him about what triggered him to offend. He stated that he could not remember all of the information but kept it written on a piece of paper in his pocket. However, he stated that he did not have it in his pocket at trial.

At the close of the State's evidence, Letkiewicz moved for a directed verdict. He asserted that the evidence was legally insufficient to show that he

suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Letkiewicz also averred, "Dr. Arambula's testimony was unable to close the analytical gap between [Letkiewicz's] last offense and his behavior today." The trial court denied Letkiewicz's motion for directed verdict.

The jury responded affirmatively to the question: "Do you find beyond a reasonable doubt that [Letkiewicz] is a sexually violent predator?" In making this determination, the jury had implicitly found that Letkiewicz suffered from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[3]

The trial court signed a judgment and order of commitment, ordering Letkiewicz to undergo outpatient treatment and to be subject to certain terms of supervision. This appeal followed in which Letkiewicz raises two issues.

**Directed Verdict**

In his first issue, Letkiewicz asserts that the trial court erred when it denied his motion for directed verdict.

---

[3]     To prove that Letkiewicz is a sexual violent predator, the State was also required to show that Letkiewicz is a repeat sexually violent offender. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003(a) (Vernon Supp. 2013). The State moved for a directed verdict regarding this element. Because the undisputed evidence showed that Letkiewicz had two convictions for sexual offenses, the trial court granted the State's motion. *See id.* The jury was instructed accordingly.

## A. Statutory Requirements

The State was required to prove beyond a reasonable doubt that Letkiewicz is a sexually violent predator. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.062(a) (Vernon 2010). A person is a "sexually violent predator" subject to commitment if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (Vernon Supp. 2013).

## B. Standard of Review

We review the trial court's denial of Letkiewicz's motion for directed verdict under a legal sufficiency standard. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005); *In re Commitment of Hatchell*, 343 S.W.3d 560, 564 (Tex. App.—Beaumont 2011, no pet). "Because the State has the burden of proof that is employed in criminal cases, we use the appellate standard of review applied in criminal cases for legal sufficiency of the evidence." *In re Commitment of Barbee*, 192 S.W.3d 835, 839 (Tex. App.—Beaumont 2006, no pet.); *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Thus, we

12

assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied).

**C.     Analysis**

On appeal, Letkiewicz asserts that "as a matter of law Dr. Arambula's testimony was insufficient to bridge the analytical gap between [Letkiewicz's] last offense and a possible behavioral abnormality today [because Dr. Arambula] failed to use scientific data to reach his conclusion." Letkiewicz complains that Dr. Arambula's opinion testimony was "unscientific" and was "unreliable."

To preserve for appeal a sufficiency complaint that challenges the expert's underlying methodology, technique, or foundational data reliability, an objection must be raised either before trial or when the State offers the opinion in evidence. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232–33 (Tex. 2004). Even if such an objection is made to the expert's testimony, the party opposing the expert's testimony must obtain an adverse ruling on the objection to preserve error for review. *See* TEX. R.APP. P. 33.1(a)(2); *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 896 (Tex. App.—Texarkana 2004, pet. denied); *see also GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 613 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Here, Letkiewicz filed a number of written objections before trial to Dr. Arambula's testimony. Among those was the following: "Respondent further objects that the expert's testimony is not reliable because there is no statutory criteria requiring specific methodology be used. The psychiatrist relies on a hunch called structured clinical judgment that has no established predictive accuracy." However, the record does not reflect that Letkiewicz ever obtained a ruling on this objection. Thus, Letkiewicz's complaint on appeal regarding the underlying methodology used by Dr. Arambula and regarding the unreliability of his testimony was not preserved. *See* TEX. R. APP. P. 33.1(a)(2).

"When a scientific opinion is admitted in evidence without objection, it may be considered probative evidence even if the basis for the opinion is unreliable." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009). Nonetheless, a verdict cannot be sustained on a mere *ipse dixit* of a credentialed witness. *Id.* "[I]f no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Id.*

Here, Dr. Arambula identified the basis for his opinion that Letkiewicz suffered from a behavioral abnormality. At trial, Dr. Arambula testified that certain risk factors indicate whether an individual has a behavioral abnormality making it probable that he will re-offend. Dr. Arambula testified that he learned

14

this method of evaluation from his psychiatric forensic fellowship and that the methodology is used and accepted in the psychiatric field. Dr. Arambula testified that the methodology is recognized in literature and supported by research.

To determine whether these risk factors existed for Letkiewicz, Dr. Arambula testified that he reviewed Letkiewicz's records and interviewed him. Dr. Arambula described the information that he learned from the records and from the interview. Dr. Arambula explained that he then evaluated the information to determine whether Letkiewicz had any identifiable risk factors to indicate that he was likely to re-offend when he is released from prison. Dr. Arambula stated that Letkiewicz did have certain risk factors. Dr. Arambula described the risk factors and explained how they indicate a present behavioral abnormality.

Chief among the risk factors was Dr. Arambula's determination that Letkiewicz suffers from pedophilia. The doctor described the accepted method for making that diagnosis and how he applied it to Letkiewicz. Dr. Arambula explained that pedophilia is chronic but can be managed with treatment, which Letkiewicz has never completed.

Dr. Arambula testified that it was clear to him during the interview that Letkiewicz currently did not understand the cycle of abuse because he could not articulate it. Dr. Arambula indicated that, until Letkiewicz understands the cycle of abuse and has internalized it, he is at risk of re-offending. Dr. Arambula

testified that the length of time that Letkiewicz has been a pedophile, the number of victims that he has had, and the fact that Letkiewicz offends against both genders are also risk factors for re-offense.

Dr. Arambula stated that Letkiewicz's minimization, denial, and rationalization of his past offenses are also risk factors for re-offense. In addition, Letkiewicz continues to have thoughts of sexual contact with children. Furthermore, Letkiewicz's other personality traits, including his inability to have lasting relationships and his unaddressed alcohol abuse are risk factors according to the doctor. In short, Dr. Arambula provided a basis for his opinion testimony that Letkiewicz has a present behavioral abnormality.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Letkiewicz suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We hold that the trial court did not err when it denied Letkiewicz's motion for directed verdict.

We overrule Letkiewicz's first issue.

**Motion to Exclude**

In his second issue, Letkiewicz asserts that the trial court erred when it denied his motion to exclude Dr. Arambula's testimony because the doctor's examination of Letkiewicz did not occur at least 90 days before trial as required in

16

subsection 841.061(c) of the SVP Act. As a general rule, a trial court's decision to admit or exclude testimony of a witness is subject to an abuse of discretion standard of review. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Subsection 841.061(c) provides, "The person and the state are each entitled to an immediate examination of the person by an expert. All components of the examination must be completed not later than the 90th day before the date the trial begins." Here, the State filed suit in April 15, 2013. The trial court signed a docket control order on April 17. The order set trial for June 24, 2013, which is 70 days after the suit was filed. The docket control order required the State to designate its experts by May 1 and for Letkiewicz to designate any experts by May 20. Any motions to exclude experts were to be filed by June 10.

Dr. Arambula examined Letkiewicz on April 30, which was 54 days before trial. The State designated Dr. Arambula as its expert on May 1. Letkiewicz filed his motion to exclude Dr. Arambula on May 10. He asserted that Dr. Arambula's examination was not in compliance with subsection 841.061(c) because it had occurred less than 90 days before trial.

The State responded that the docket control order, setting trial for 70 days after the filing of the petition, made compliance with subsection 841.061(c) not possible. The State averred that the trial setting was expedited because

17

Letkiewicz's estimated release date from prison was May 22, 2013. The State asserted that a trial court has "a legitimate interest in protecting the community by expediting trials when the release of individuals alleged to be sexually violent predators is imminent."

The State asserted that Letkiewicz had been informed of and had agreed to the expedited trial setting at a pretrial conference on April 17. However, as Letkiewicz points out, no transcript from the pretrial conference appears in the record and nothing otherwise reflects that he expressly agreed to an expedited trial setting.

On June 4, 2013, the trial court signed an order denying Letkiewicz's motion to exclude Dr. Arambula's testimony. On appeal, Letkiewicz asserts that the trial court had no discretion to deny its motion to exclude because subsection 841.061(c) provides that an expert's evaluation "must" be completed 90 days before trial.

There is no "absolute test" for courts to apply when determining whether a statutory requirement is directory or mandatory. *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956). Generally, statutes including words such as "shall" or "must" are construed as mandatory. *See id.*; *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *see also* TEX. GOV'T CODE ANN. § 311.016 (West 2005) (explaining that, when construing statutes, courts should construe word

"must" as creating or recognizing condition precedent). Nonetheless, courts "have, in certain circumstances, construed" these terms as being directory rather than mandatory. *Tex. Mut. Ins. Co. v. Vista Cmty. Med. Ctr., L.L.P.*, 275 S.W.3d 538, 552 (Tex. App.—Austin 2008, no pet.); *see also Chisholm*, 287 S.W.2d at 945. Statutory provisions that "are included for the purpose of promoting the proper, orderly and prompt conduct of business" are generally not construed as mandatory. *Chisholm*, 287 S.W.2d at 945. This is particularly the case when the failure to comply will not prejudice the rights of the interested parties. *See Tex. Dep't of Pub. Safety v. Dear*, 999 S.W.2d 148, 152 (Tex. App.—Austin 1999, no pet.).

If a statute does not specify any consequences for failing to act by a statutory deadline, the lack of consequences is a factor weighing in favor of construing the statute as directory, rather than mandatory. *Chisholm*, 287 S.W.2d at 945. In other words, "[i]f a provision requires that an act be performed within a certain time without any words restraining the act's performance after that time, the timing provision is usually directory." *Wilkins*, 47 S.W.3d at 495; *see also Dear*, 999 S.W.2d at 152 (explaining that if provision is directory and act is performed, but not in time or manner indicated, act will be deemed sufficient provided that act accomplishes substantial purpose of statute). Thus, when a statute uses the word "must" to describe a requirement and also includes a penalty for noncompliance, "[t]he word 'must' is given a mandatory meaning." *Wilkins*, 47 S.W.3d at 493.

19

But, the absence of a penalty does not automatically compel the conclusion that a statute providing that an act "must" be accomplished is not mandatory. *See Edwards Aquifer Auth. v. Chemical Lime, Ltd.*, 291 S.W.3d 392, 404 (Tex. 2009). Rather, "'[w]hen the statute is silent'" regarding the penalty for noncompliance, courts look to the statute's "'purpose for guidance.'" *Id.* (quoting *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex. 1992)); *see also Chisholm*, 287 S.W.2d at 945 (stating that, when determining whether provision is mandatory or directory, courts should consider "the entire act, its nature and object," and consequences of alternative constructions).

With these principles in mind, we review subsection 841.061(c) to determine whether the requirement that an expert's examination must be completed 90 days before trial is directory or mandatory. As Letkiewicz points out, the provision is written in mandatory language. However, the legislature has provided no consequence for noncompliance with this provision. Thus, we look to the statute's purpose for guidance. *See Edwards Aquifer Auth.*, 291 S.W.3d at 404.

In determining the purpose of subsection 841.061(c), we first look at the broader purpose of the statutory scheme of which it is a part. We recognize that the purpose of the Sexually Violent Predators Act is "to protect the community from harm and to treat the individual who has been committed as a sexually violent predator." *In re Commitment of Evers*, No. 09–11–00430–CV, 2012 WL 6213508,

20

at \*4 (Tex. App.—Beaumont Dec. 13, 2012, pet. denied) (mem. op.); *see* Tex. HEALTH & SAFETY CODE ANN. § 841.001 (Vernon 2010) ("The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. . . . [T]he legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.").

Focusing a bit more narrowly, section 841.061, of which subsection (c) is a part, reads as follows:

**§ 841.061. Trial**

(a) Not later than the 270th day after the date a petition is served on the person under Section 841.041, the judge shall conduct a trial to determine whether the person is a sexually violent predator.

(b) The person or the state is entitled to a jury trial on demand. A demand for a jury trial must be filed in writing not later than the 10th day before the date the trial is scheduled to begin.

(c) The person and the state are each entitled to an immediate examination of the person by an expert. All components of the examination must be completed not later than the 90th day before the date the trial begins.

(d) Additional rights of the person at the trial include the following:

(1) the right to appear at the trial;

(2) except as provided by Subsection (f), the right to present evidence on the person's behalf;

(3) the right to cross-examine a witness who testifies against the person; and

(4) the right to view and copy all petitions and reports in the court file.

(e) The attorney representing the state may rely on the petition filed under Section 841.041 and supplement the petition with documentary evidence or live testimony.

(f) A person who is on trial to determine the person's status as a sexually violent predator is required to submit to all expert examinations that are required or permitted of the state to prepare for the person's trial. A person who fails to submit to expert examination on the state's behalf as required by this subsection is subject to the following consequences:

(1) the person's failure to participate may be used as evidence against the person at trial;

(2) the person may be prohibited from offering into evidence the results of an expert examination performed on the person's behalf; and

(3) the person may be subject to contempt proceedings if the person violates a court order by failing to submit to an expert examination on the state's behalf.

(g) A judge assigned to preside over a trial under this subchapter is not subject to an objection under Section 74.053, Government Code, other than an objection made under Section 74.053(d), Government Code.

TEX. HEALTH & SAFETY CODE ANN. § 841.061. From its provisions, the apparent

purpose of section 841.061 is to provide the framework for litigating a

commitment proceeding under the SVP Act. Its provisions "do not go to the essence of the act to be performed," that is, the commitment, but rather serve "the purpose of promoting the proper, orderly and prompt conduct of business" in commitment proceedings under the SVP Act. *See Lewis v. Jacksonville Bldg. and Loan Ass'n*, 540 S.W.2d 307, 309 (Tex. 1976). Section 841.061's provisions indicate that the legislature intended commitment proceedings under the SVP Act to be expeditious and orderly. In this regard, the section serves the greater purpose of the SVP Act to protect the public and to provide treatment while also preserving the due process rights of the person subject to a civil commitment proceeding.

Nothing in section 841.061 indicates that an expert's testimony should be excluded for noncompliance with the 90-day requirement. To the contrary, the statutory provisions show the importance placed on the expert's evaluation by the legislature. Subsection (f) requires the individual to submit to an expert evaluation or suffer the consequences for noncompliance identified in that provision. TEX. HEALTH & SAFETY CODE ANN. § 841.061(f). Given these provisions, we can divine no legislative intent to exclude the expert's testimony merely for non-compliance with the 90-day provision.

Moreover, as seen in this case, an expert's evaluation is central to a commitment proceeding. Excluding the expert's testimony for failure to comply

with the time requirement would undermine the intended benefits of the SVP Act to protect the public and to provide treatment to sexually violent predators.

We are mindful that the 90-day requirement may serve to insure that the parties have sufficient time to depose experts and to prepare for trial. However, failure to comply with the requirement will not necessarily prejudice the parties, as demonstrated in this case. The record indicates that Letkiewicz deposed Dr. Arambula on June 6. The record also shows that Letkiewicz's counsel thoroughly cross-examined Dr. Arambula at trial. Letkiewicz has never claimed that he suffered prejudice or was denied a fair trial by noncompliance with the 90-day requirement.

Finally, parties are not without remedy if they feel they need additional time to prepare for trial in a civil commitment case. Section 841.063 of the SVP Act provides that the trial court may grant a continuance on the request of either party and on a showing of good cause, provided that the continuance does not substantially prejudice the individual. HEALTH & SAFETY CODE ANN. § 841.063 (Vernon 2010). Here, Letkiewicz did not request a continuance of the trial.

We conclude that the requirement that an expert's evaluation must be completed 90 days before trial is a directory requirement; it is not a mandatory requirement. We hold that the trial court did not abuse its discretion when it denied Letkiewicz's motion to exclude Dr. Arambula's testimony.

We overrule Letkiewicz's second issue.[4]

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

---

[4] In his reply brief, Letkiewicz asserts that he was denied counsel in the trial court. We note that Letkiewicz raises this issue for the first time in his reply brief. Generally, we should not consider issues raised for the first time in a reply brief filed on appeal. *See City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986); *see also* TEX. R. APP. P. 38.3 (providing that appellant may file reply brief "addressing any matter in the appellee's brief" but that court may consider and decide case before reply brief is filed). In any event, the record does not show that Letkiewicz was denied counsel at any stage of the proceeding. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.144(a) (Vernon 2010) (providing that person subject to a civil commitment proceeding under the SVP Act "is entitled to the assistance of counsel at all stages of the proceeding"). The State filed its petition on April 15, 2013. The trial court appointed counsel to Letkiewicz on April 17, 2013. The record does not reflect any activity between the filing of the petition and the appointment of Letkiewicz's counsel. Although it is not clear, Letkiewicz may be complaining of the trial court's denial of his motion for his counsel to be present during Dr. Arambula's examination. We note that the Beaumont Court of Appeals has recently decided this issue, holding that "neither the [] statute nor the Fourteenth Amendment require that counsel be present during a psychiatrist's post-petition examination." *In Re Commitment of Smith*, No. 09–13–00100–CV, 2014 WL 333374, at *3 (Tex. App.—Beaumont Jan. 23, 2014, pet. filed).